QUESTIONS:
1. Is s. 8(e), Art. II of the Florida Constitution a self-executing constitutional amendment?
2. Is the prohibition against lobbying contained in s. 8(e), Art. II, violative of either the United States or Florida Constitution?
SUMMARY:
Section 8(e), Art. II, is a self-executing provision of the Florida Constitution insofar as it prohibits conduct by legislators and statewide elected officers. It is not self-executing regarding other public officers or employees, and hence legislative direction is required to bind such other officers and employees by its prohibitions. In accordance with decisions of the federal courts, it would appear that s. 8(e), Art. II, is in harmony with and would withstand challenge under the United States Constitution. No definitive response to this question may be given, however, absent specific judicial clarification of the matter.
Your first question appears to be motivated by the recent decision of the Second Judicial Circuit Court (Leon County) in Williams v. Smith, Case #77-1534, which held that s. 8(d), Art. II, State Const., is not self-executing, i.e., will not become operative without the aid of supplemental or enabling legislation. You ask whether the court's reasoning should also be applied to s. 8(e), resulting in the need for legislation in order for its provisions to be operative. For the following reasons, it is my opinion that the two constitutional provisions are not analogous and that s. 8(e), Art. II, does not require implementing legislation, though the Legislature is specifically empowered to extend its provisions to other public officials or employees.
Section 8(d) and (e), Art. II, reads as follows:
 (d) Any public officer or employee who is convicted of a felony involving a breach of public trust shall be subject to forfeiture of rights and privileges under a public retirement system or pension plan in such manner as may be provided by law.
 (e) No member of the legislature or statewide elected officer shall personally represent another person or entity for compensation before the government body or agency of which the individual was an officer or member for a period of two years following vacation of office. No member of the legislature shall personally represent another person or entity for compensation during term of office before any state agency other than judicial tribunals. Similar restrictions on other public officers and employees may be established by law. (Emphasis supplied.)
In determining whether a constitutional provision is self-executing, the Florida Supreme Court has stated that there is a presumption that constitutional provisions are self-operating. Gray v. Bryant, 125 So.2d 846 (Fla. 1960).
In elaborating upon this position the court said:
 The basic guide, or test, in determining whether a constitutional provision should be construed to be self-executing, or not self-executing, is whether or not the provision lays down a sufficient rule by means of which the right or purpose which it gives or is intended to accomplish may be determined, enjoyed, or protected without the aid of legislative enactment.
 The will of the people is paramount in determining whether a constitutional provision is self-executing and the modern doctrine favors the presumption that constitutional provisions are intended to be self-operating. This is so because in the absence of such presumption the legislature would have the power to nullify the will of the people expressed in their constitution, the most sacrosanct of all expressions of the people. [Id. at 851; emphasis supplied.]
See also State v. Harris, 136 So.2d 633 (Fla. 1962), and Alsdorf v. Broward County, 333 So.2d 457 (Fla. 1976); cf. Jackson v. Consolidated Gov't of City of Jacksonville, 225 So.2d 497 (Fla. 1969); and see 6 Fla. Jur. Constitutional Law s. 32 and cases cited therein.
Clearly, in determining whether, in any given case, legislative enactment is required to give effect to a constitutional provision, the language of the provision may be determinative and is a principal criterion to be considered. See 16 C.J.S.Constitutional Law s. 48 and cases cited therein; cf. Lewis v. Florida State Board of Health, 143 So.2d 867 (1 D.C.A. Fla., 1962), cert. denied 149 So.2d 41, and Porter v. First National Bank of Panama City, 119 So. 130 (Fla. 1928), both cases construing provisions specifically addressed to legislative action, and, therefore, held to be not self-executing.
In Williams v. Smith, supra, the defendant had been convicted in federal court of violating the federal drug laws. The state sought, under s. 8(d), Art. II, to deny him his rights and privileges under the state retirement system. (Apparently the question of whether this was in fact a `felony involving a breach of public trust' was not at issue.) He argued that the provision was not self-executing and that, therefore, it could not be applied to him since it required legislative action to effectuate it. The court agreed, apparently finding that the phrase `. . . in such manner as may be provided by law,' precludes administration of the provision absent direction from the Legislature. Section 8(e), Art. II, however, contains no such qualifying phrase. Rather, it contains a clear prohibition. A legislator or elected officer may not personally represent another person or entity for compensation before the agency with which he was employed for at least 2 years after leaving office; and no legislator may represent anyone for compensation before any agency, other than a court, during his term of office. Therefore, since there is no language contemplating legislative action as a prerequisite to the provision's having effect, and since the language unambiguously provides a sufficient rule by which an individual may govern his conduct, the presumption that the provision is self-executing should in my opinion prevail. Though the provision further provides that its prohibitions may be extended by law to cover other governmental officers and employees, it does not require any legislation whatsoever prior to its becoming effective in regard to the offices it specifically enumerates. When two clauses of a provision are divisible, as in the provision under consideration, one may be self-executing while the other may require the Legislature to act. 16 C.J.S. Constitutional Law s. 48. Hence, the Legislature need only act if it wishes to extend the prohibitions of s. 8(e) to officers not specifically covered therein. Finally, please note that this opinion is consistent with my earlier opinion in AGO 076-242, in which I presumed, without discussion, that s. 8(e) required no legislation to give it force or effect.
Your second question asks whether the prohibition contained in s. 8(e) is violative of either the Federal or State Constitution. Our office may not make a definitive determination as to the constitutionality of the provision, as such is within the sole province of the judiciary. However, the following discussion may prove helpful in this regard.
It has often been paid that there is no constitutional or fundamental right to public employment. Board of Regents v. Roth,408 U.S. 564 (1972), Orr v. Trinter, 444 F.2d 128 (6th Cir. 1971), Talbot v. Pyke, 533 F.2d 331 (6th Cir. 1976). However, the Supreme Court has further stated that while there is no right to such employment, and that it may be regulated, it may not be deprived or taken away for just any reason. Elrod v. Burns, 427 U.S. 347
(1976). There must be a rational basis for any such deprivations. In this regard, it has long since been the rule that it is not the constitutional prerogative of the federal judiciary to question the necessity or the widsom of state or federal legislative directives or state constitutional provisions. Olsen v. Nebraskaex rel. Western Reference and Bond Ass'n, 313 U.S. 236 (1941); Whalen v. Roe, 51 L.Ed. 64, 72 (1977). Rather, the role of the federal judiciary extends only to a determination of whether a provision is arbitrary, unreasonable, capricious, or discriminatory and whether it serves a valid purpose in a rational manner. See 16A C.J.S. Constitutional Law s. 569(5) and cases cited therein.
In the instant case our query is whether s. 8(e) is a rational and reasonable way to deal with a problem the state has a valid interest in controlling. A federal court recently applied the rational basis test to the Illinois Corrupt Practices Act in Shoresman v. Burgess, 412 F. Supp. 831 (E.D. Ill. 1976). A conflict-of-interest provision in the act was challenged under theFourteenth Amendment as a violation of the Federal Constitution because it had the probable result of forcing a plaintiff to resign his elected position on a school board due to a conflict of interest created by his wife's position as a district school teacher. The court found any right to hold public office was not absolute `for the liberty guaranteed under the due process clause of the Fourteenth Amendment applies to arbitrary interferences.' (Emphasis supplied.) The court held that the restriction on employment was reasonable since the state's interest in protecting the faith of its citizens in their elected and appointed officials was clearly significant and outweighed the plaintiff's interest in the position he held. An Illinois state court has noted in this regard:
 The purpose of the general conflict-of-interest statute is not to deny a class of individuals public office, rather it is to deter a public officer from participating in official decisions which would benefit him financially to the prejudice of those whom he is to serve. [Brown v. Kirk, 342 N.E.2d 137, 142 (Ill. 5th Dist. Ct. 1975).]
The Alaska Supreme Court has commented upon a provision in that state's constitution making it illegal for a legislator to hold a public office during his term or for 1 year thereafter, if the position was created or the salary thereof increased during his term of office:
 The purpose sought to be accomplished by that section is not merely to prevent an individual legislator from profiting by an action taken by him with bad motives, but to prevent all legislators from being influenced by either conscious or unconscious selfish motives. There is nothing in the provision making its restriction dependent on the intent of an individual legislator in voting for the bill in question. [Warwick v. Chance, 548 P.2d 384 (Alaska 1976).]
See also Gonzalez v. Manzagol, 531 P.2d 1203 (N.M. 1975). It can be seen that an individual who is or seeks to be a public official is subject to certain state regulations and may, under certain circumstances, be validly and constitutionally deprived of a public office or the right to run for one when the applicable law is enacted to further the legitimate governmental goal of preserving trust in and minimizing corruption of public officials.
Granting a motion to dismiss, a federal court sitting in Florida applied the rational basis test to a constitutional challenge of s. 8(a) and (b), Art. II, the financial disclosure portions of our Constitution. Plante v. Gonzalez, TCA 77-8052 (N.D.Fla. 1977). Under that test, the court found the provision to be `undeniably constitutional' because
 [i]t constitutes a reasoned effort to deal with the problems posed by governmental corruption and the loss of public confidence in the integrity of elected and appointed state officials. [Plante, Op. at 6-7.]
In Buckley v. Valeo, 424 U.S. 1 (1976), the United States Supreme Court applied a stricter standard than this `rational basis' test to provisions of the Federal Election Campaign Act of 1971, since it was challenged on the basis of First Amendment and other fundamental rights which warrant application of the strict scrutiny test. Even under this strict standard the court upheld certain provisions of the act, aimed, as is s. 8, Art. II, at ethics in government. The court held that the danger of infringing the fundamental constitutional rights involved was outweighed by the important governmental interest of, inter alia, deterring governmental corruption and its appearance. The Plante court, though it found no fundamental rights involved which would invoke the strict scrutiny test, also reviewed the provision under theBuckley standard as well as the rational basis standard. The court held that the overriding governmental interests involved prevailed over the possible danger of infringing any constitutional rights:
 . . . [T]he amendment could act as a valuable deterrent to political corruption and conflicts of interest. . . . [I]t is undeniable that the disclosure requirement will tend to discourage those who might otherwise use public office as a means toward improperly enriching themselves. . . . [T]he amendment may [also] help to create an atmosphere of trust and confidence between the citizens of The State of Florida and the persons they choose to represent them in government. [Id. at 9-10.]
 See also Fritz v. Gorton, 517 P.2d 911 (Wash. 1974); Illinois State Employees Association v. Walker, 315 N.E.2d 9 (Ill. 1974).
 The Florida Supreme Court, faced with the constitutionality of a state statutory disclosure provision, has held that the state has a `compelling interest in protecting its citizens from abuse of the trust placed in their elected officials. . . .' (Emphasis supplied.) Goldtrap v. Askew, 334 So.2d 20, 22
(Fla. 1976).
 Finally, a federal statute analogous to s. 8(e), Art. II, has withstood federal constitutional challenge in U.S. v. Nasser, 476 F.2d 1111 (7th Cir. 1973). The case concerned 18 U.S.C. § 207 and regulations promulgated thereunder. 32 C.F.R. § 40.15. Section (i) provides that a former officer or employee `may not, at any time after his government employment has ended, represent anyone other than the United States in connection with a matter in which the United States is a party or has an interest and in which he participated personally and substantially for the government.' Section (ii) provides that a former employee `may not for one year after his government employment has ended, represent anyone other than the United States in connection with a matter in which the United States is a party or has an interest and which was within the boundaries of his official responsibility during the last year of his government service.' The definition of `regular officer or employee' would include elected or legislative officials. The Nasser
court upheld the restrictions as a rational means of pursuing a `legitimate legislative purpose':
 The purpose of protecting the government, which can act only through agents, from the use against it by former agents of information gained in the course of their agency, is clearly a proper one. The restriction, against acting as agent or attorney for another in a matter in which the person participated personally and substantially as an officer or employee, is clearly a wholly rational means of pursuing that purpose.
 The conclusion underlying s. 207(a), before us, that one who, after leaving government employment, acts for another in a matter in which he participated while in such employment, is likely to use against the government an advantage gained out of being the government's agent is a common sense conclusion. . . .
 Section 207(a) does not disqualify former government employees from all or a segment of the practice of law. It disqualifies only from particular cases where Congress could rationally make the judgment that participation would be evil as a result of an individual's previous activity as a government employee in the same manner. [476 F.2d 1116-1117.]
The court concluded that the law was neither an unlawful bill of attainder nor an ex post facto law.
It should also be noted that s. 12, Art. V, of the Florida Constitution was adopted in 1968 to achieve the same purpose as18 U.S.C. § 207(a) and the subsequently adopted s. 8(e), Art. II, Florida Constitution: to protect the government. Section 12, Art. V, states:
 No member of the [judicial qualifications] commission except a justice or a judge shall be eligible for state judicial office so long as he is a member of the commission and for a period of two years thereafter.
Incidentally, in this regard, The Florida Bar Code of Professional Responsibility, Canon 9, E.C. 9-4, states:
 After a lawyer leaves judicial office or other public employment, he should not accept employment in connection with any matter in which he has had substantial responsibility prior to his leaving, since to accept employment would give the appearance of impropriety even if none exists.
Hence, a Florida attorney is already bound by legal ethics possibly more stringent than s. 8(e), Art. II.
It can be seen that the state's vital interest in ethical government is accorded great deference by the courts. Assuming that a court would find s. 8(e), Art. II, a rational and reasonable way to achieve its objective of preventing corruption in government, as I believe it would, the state constitutional provision in question would, in my opinion, survive challenge under the Federal Constitution.
You also inquire as to whether the constitutional provision might be violative of the State Constitution itself. You do not mention any particular provision that might be violated by s. 8(e), Art. II. However, a cardinal rule of constitutional construction is that all parts of the document are to be construed as a whole and any interpretation which would render any part of it void or inoperative should be scrupulously avoided. As stated by the Supreme Court of Florida, `[It is] in accord with well-settled principles of construction that, where a constitutional provision will bear two constructions, one of which is consistent with, and the other inconsistent with, an intention clearly expressed in another section, the former construction should be adopted so that `both provisions may stand and have effect." Advisory Opinion to the Governor, 96 So.2d 541 (Fla. 1957). See also State ex rel. Miami Herald Pub. Co. v. McIntosh, 340 So.2d 904 (Fla. 1976); Smathers v. Smith, 338 So.2d 825 (Fla. 1976); Askew v. Game and Fresh Water Fish Comm., 336 So.2d 556 (Fla. 1976); Burnsed v. Seaboard Coast Line R. Co., 290 So.2d 13 (Fla. 1974); Gray v. Bryant, 125 So.2d 846 (Fla. 1961); and see 6 Fla. Jur.Constitutional Law s. 20, and cases cited therein. Hence, since I find no provision of the Constitution which directly and irreconcilably conflicts with s. 8(e), Art. II, it is my opinion that it is a fully effective constitutional provision.
Prepared by: Sharyn L. Smith Frank A. Vickory Assistant Attorneys General