133 Nev., Advance Opinion 101
IN THE SUPREME COURT OF THE STATE OF NEVADA

ARCHON CORPORATION; PAUL W. LOWDEN; AND SUZANNE LOWDEN,
Petitioners,
vs.
THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE JOSEPH HARDY, JR., DISTRICT JUDGE,
Respondents,
and
STEPHEN HABERKORN, AN INDIVIDUAL,
Real Party in Interest.

No. 71802

**FILED**

DEC 21 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus or prohibition challenging the denial of a motion to dismiss based on tolling of the statute of limitations.

*Petition denied.*

Dickinson Wright PLLC and John P. Desmond, Justin J. Bustos, and Kenneth K. Ching, Reno,
for Petitioners.

Sklar Williams PLLC and Stephen R. Hackett and Johnathon Fayeghi, Las Vegas,
for Real Party in Interest.

BEFORE DOUGLAS, GIBBONS and PICKERING, JJ.

*OPINION*

By the Court, PICKERING, J.:

This original writ proceeding raises the question of when it is appropriate to exercise our discretion to grant extraordinary relief in the form of advisory mandamus. Petitioners ask us to direct the district court to vacate and reconsider its order denying their motion to dismiss, without applying the doctrine of cross-jurisdictional class-action tolling to their statute of limitations defenses. We decline to grant writ relief for three reasons. First, the district court did not consider the statute-based argument petitioners make to this court because petitioners failed to cite the statute until the hearing on their motion to dismiss, after the briefing on their motion had closed. Second, our clarification of the law would not alter the district court's disposition because the district court had alternative grounds for its decision. Finally, the district court denied the motion to dismiss without prejudice. Its decision to defer final decision on petitioners' statute of limitations defenses pending further factual and legal development strikes us as sound and not the proper basis for extraordinary writ relief.

I.

Real party in interest Stephen Haberkorn owned exchangeable, redeemable, preferred stock in petitioner Archon Corporation. In 2007, Archon redeemed its preferred stock for $5.241 per share. The redemption led investors to file three separate lawsuits against Archon in Nevada federal district court. In each, the plaintiffs asserted that Archon had miscalculated the redemption price and should have paid $8.69 per share. Two of the suits, both by institutional investors, were resolved on summary judgment awarding damages based on a redemption price of $8.69 per

share. *See D.E. Shaw Laminar Portfolios, LLC v. Archon Corp.*, 755 F. Supp. 2d 1122, 1128-29 (D. Nev. 2010), *aff'd*, 483 Fed. App'x 358 (9th Cir. 2012). The third suit was a class action in which the named plaintiff, David Rainero, sought contract-based damages on behalf of himself and other preferred stockholders, including Haberkorn, for the correctly calculated redemption price. In 2013, based on the summary judgments won by the institutional investors, the federal district court granted partial summary judgment to Rainero, holding that Archon should have paid all of its preferred shareholders $8.69 per share to redeem their stock.

Federal courts have limited subject matter jurisdiction. The Rainero complaint laid claim to federal jurisdiction under 28 U.S.C. § 1332(d)(2), which creates federal jurisdiction for certain class action suits provided the amount in controversy exceeds $5 million. *See Rainero v. Archon Corp.*, 844 F.3d 832, 836 (9th Cir. 2016). After losing on liability at partial summary judgment, Archon moved to dismiss the Rainero suit for want of subject matter jurisdiction. Archon argued that the class members owned 1,439,270 shares of preferred stock, making the amount in controversy $4,964,042, less than the $5 million required for federal jurisdiction by 28 U.S.C. § 1332(d). The federal district court agreed. On September 29, 2014, it granted Archon's motion to dismiss, a ruling the Ninth Circuit affirmed in late 2016. *Archon*, 844 F.3d at 841.

Haberkorn filed the complaint underlying this writ petition on February 29, 2016, after the district court's dismissal but before the Ninth Circuit affirmed. Haberkorn's state court complaint overlaps Rainero's federal court complaint in that it includes allegations that Archon shortchanged its preferred stockholders when it calculated the redemption price for their stock in 2007. But Haberkorn's complaint differs from

Supreme Court
OF
Nevada

(O) 1947A

3

Rainero's in that Haberkorn alleges rights as both a common and preferred stockholder; adds as defendants Paul and Suzanne Lowden, who are Archon's officers, directors, and majority stockholders; alleges that Archon's miscalculation of the redemption price invalidates the redemption, meaning that Haberkorn's ownership rights, including rights to dividends, have continued to accrue; and asserts claims for a variety of alleged wrongs, including breaches of fiduciary duty associated with Archon's allegedly wrongful reverse stock split and the deregistration that followed in 2011, Archon's nondisclosure in 2012 that it had suffered a final judgment declaring it to have miscalculated the 2007 redemption price, and its unequal treatment of certain preferred stockholders. On these bases, suing individually and not on behalf of a class, Haberkorn seeks a declaratory judgment, compensatory and punitive damages, restitution for unjust enrichment, and an accounting.

Petitioners Archon Corporation and the Lowdens (collectively, Archon) moved to dismiss Haberkorn's complaint under NRCP 12(b)(5). The motion asserted that Haberkorn waited too long to file suit and the statute of limitations had run on all of his claims. Haberkorn countered that the pendency of the class action in federal court tolled the statute of limitations and that, even if it didn't, Archon's ongoing breaches caused ongoing harm, making it improper to dismiss the complaint for failure to state a claim. At oral argument on the motion to dismiss, Archon argued for the first time that NRS 11.500, reprinted *infra* note 1, supported dismissal.

The district court denied Archon's motion to dismiss. Its order summarizes its reasons as follows:

> (1) general class action tolling applies; (2) under these circumstances, cross jurisdictional tolling

also applies; (3) the remaining arguments in favor of, or against, dismissal, would be more appropriately raised in a Motion for Summary Judgment, in particular Defendants' argument that Plaintiff knew or should have known of various public record filings; (4) the Court could not rule on NRS 11.500 at this time, as it was not raised in the briefs; and (5) in the alternative, the Motion should also be denied because of the ongoing harm as alleged [by plaintiff].

This petition for writ of prohibition or mandamus followed.

## II.

A writ of mandamus is not a substitute for an appeal. *See Schlagenhauf v. Holder*, 379 U.S. 104, 110 (1964). Nor should the interlocutory petition for mandamus be a routine litigation practice; mandamus is an extraordinary remedy, reserved for extraordinary causes. *Ex parte Fahey*, 332 U.S. 258, 260 (1947); *see* 52 Am. Jur. 2d *Mandamus* § 22 (2011) ("Writs of mandamus are issued cautiously and sparingly, as the remedy of mandamus is a drastic one, to be *invoked only in extraordinary situations or under exceptional circumstances*.") (footnotes omitted).

Historically, extraordinary writ relief would not issue except when needed to correct a district court's "usurpation of power," *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 217 (1945), or its failure to discharge a duty imposed by law. *See Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943) ("The traditional use of the writ . . . has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so."). Nevada's writ statutes reflect these historical limitations. Carried forward without substantial change from their original enactment as part of Nevada's Civil Practice Act (NCPA) of 1911, these statutes provide for a writ of mandamus to compel an act that the law requires, NRS 34.160; *see* NCPA § 753 (1911),

Supreme Court
of
Nevada

(O) 1947A

5

*reprinted in* 1912 Nev. Rev. Laws § 5695, at 1662, or a writ of prohibition to arrest proceedings the district court or other tribunal exercising judicial functions lacks jurisdiction to conduct, NRS 34.320; *see* NCPA § 766 (1911), *reprinted in* 1912 Nev. Rev. Laws § 5708, at 1668. For either form of statutory writ to issue, the case should be one "where there is not a plain, speedy and adequate remedy in the ordinary course of law." NRS 34.170 (mandamus); NRS 34.330 (prohibition).

In exercising its power to entertain extraordinary writ review of district court decisions, *see* Nev. Const. art. 6, § 4(1), this court has not confined itself to policing jurisdictional excesses and refusals. It has also granted writ relief where the district court judge has committed "clear and indisputable" legal error, *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 384 (1953); *see Smith v. Eighth Judicial Dist. Court,* 113 Nev. 1343, 1344-45, 950 P.2d 280, 281 (1997) (writ relief may be granted when dismissal is required "pursuant to clear authority"), or an "arbitrary or capricious" abuse of discretion. *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 122 Nev. 132, 142, 127 P.3d 1088, 1096 (2006). In considering petitions for writ relief based on clear error or manifest abuse of discretion, this court applies the statute-based rule that the right of eventual appeal from the final judgment "is generally an adequate legal remedy that precludes writ relief." *Pan v. Eighth Judicial Dist. Court*, 120 Nev. 222, 223, 88 P.3d 840, 841 (2004); *see In re Linee Aeree Italiane (Alitalia)*, 469 F.3d 638, 640 (7th Cir. 2006) ("[M]andamus requires not only a clear error but one that unless immediately corrected will wreak irreparable harm.").

A separate branch of extraordinary writ review has evolved in the case law that does not seek to correct jurisdictional excesses or abdications—or even, to interdict "clear and indisputable" errors or

"arbitrary and capricious" abuses of discretion—but is advisory in nature. *See, e.g., La Buy v. Howes Leather Co.*, 352 U.S. 249, 250-51 (1957); *Schlagenhauf*, 379 U.S. at 110. Advisory mandamus may be appropriate when "an important issue of law needs clarification and considerations of sound judicial economy and administration militate in favor of granting the petition." *Int'l Game Tech.*, 124 Nev. at 197-98, 179 P.3d at 559; *see also Smith*, 113 Nev. at 1344, 950 P.2d at 281. The advantage of advisory mandamus is that it allows this court "to provide occasional appellate guidance on matters that often elude ordinary appeal, without establishing rules of appealability that will bring a flood of less important appeals in their wake." 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3934.1, at 671 (3d ed. 2012). But because advisory mandamus allows writ review not permitted by traditional doctrines, it risks being misused in ways that subvert the final judgment rule. *See* Note, *Supervisory and Advisory Mandamus Under the All Writs Act*, 86 Harv. L. Rev. 595, 608 (1973). The challenge is to formulate objective criteria that facilitate advisory mandamus as "a valuable ad hoc relief valve for the pressures that are imperfectly contained by the statutes [and rules] permitting appeals from final judgments and [certain] interlocutory orders," 16 Charles Alan Wright, *supra*, § 3934.1, at 671, yet that cabin the risk of "interlocutory orders [becoming] appealable routinely, but with 'appeal' renamed 'mandamus,'" *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1294 (7th Cir. 1995).

In this case, Archon concedes that the district court was not required to dismiss Haberkorn's action pursuant to clear authority, and that an appeal is an adequate remedy at law. Instead, Archon asks us to exercise advisory writ review because it claims that cross-jurisdictional

class-action tolling of statutory limitation periods presents an issue of statewide importance that needs clarification. As the petitioner, Archon bears the burden of demonstrating that extraordinary writ relief is warranted. *Pan*, 120 Nev. at 228, 88 P.3d at 844. The decision to entertain a petition for advisory mandamus, equally with any other petition for extraordinary writ relief, is "purely discretionary." *Smith v. Eighth Judicial Dist. Court*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991). The sound exercise of that discretion requires special care in the advisory mandamus context, to avoid subverting the final judgment rule and inviting, rather than avoiding, undue delay and expense in dispute resolution.

### III.

### A.

Class-action tolling suspends the statute of limitations "for all purported members of the class until a formal decision on class certification has been made, or until the individual plaintiff opts out." *Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1135 (D. Nev. 1999); *see Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 352 (1983); *Jane Roe Dancer I-VII v. Golden Coin, Ltd.*, 124 Nev. 28, 34, 176 P.3d 271, 275 (2008). Cross-jurisdictional class-action tolling would suspend the statute of limitations for all purported class members even if the class action was pending in a different jurisdiction than the one in which the individual plaintiff later brings suit. Courts elsewhere have divided on whether to adopt such tolling based on competing policy concerns. *Compare, e.g., Dow Chem. Corp. v. Blanco*, 67 A.3d 392, 394-99 (Del. 2013) (adopting cross-jurisdictional tolling to prevent placeholder actions and encourage the efficiency of class-action procedures), *with Portwood v. Ford Motor Co.*, 701 N.E.2d 1102, 1103-05 (Ill. 1998)

SUPREME COURT
OF
NEVADA

(O) 1947A

8

(rejecting cross-jurisdictional tolling to protect state statutes of limitations, prevent forum shopping, and avoid overburdening local courts).

In its petition, Archon urges this court to reject the doctrine of cross-jurisdictional class-action tolling. As support, Archon cites the extra-jurisdictional cases that have rejected the doctrine. But Archon argues that "[p]erhaps the most important issue" presented by its petition is whether the doctrine of cross-jurisdictional class-action tolling conflicts with NRS 11.500.[1] Under NRS 11.500, an action dismissed for lack of subject matter jurisdiction may be recommenced in the court having jurisdiction within ninety days, even if the statute of limitations has run, unless more than five years has passed since the original action was commenced. Cross-jurisdictional class-action tolling, Archon urges, would allow the federal judiciary's actions to indefinitely extend the statute of limitations beyond what it characterizes as NRS 11.500's five-year period of repose.

---

[1]NRS 11.500 reads in relevant part as follows:

> 1. Notwithstanding any other provision of law, and except as otherwise provided in this section, if an action that is commenced within the applicable period of limitations is dismissed because the court lacked jurisdiction over the subject matter of the action, the action may be recommenced in the court having jurisdiction within:
>> (a) The applicable period of limitations; or
>> (b) Ninety days after the action is dismissed, whichever is later.
>
> . . . .
>
> 3. An action may not be recommenced pursuant to paragraph (b) of subsection 1 more than 5 years after the date on which the original action was commenced.

Supreme Court
OF
Nevada

(O) 1947A

This argument, however, was never adequately presented to the district court. Archon failed to discuss NRS 11.500 in its written motion to dismiss or reply thereto, resulting in the district court's refusal to consider the argument when Archon tried to raise it orally at the hearing on its motion to dismiss. *See* EDCR 2.20 (stating requirements for motion practice). And, not only did Archon fail to properly present NRS 11.500 to the district court, the NRS 11.500 argument set forth in its writ petition differs significantly from that made orally in district court.

"A point not urged in the trial court, unless it goes to the jurisdiction of that court, is deemed to have been waived and will not be considered on appeal." *Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981). This rule is not absolute; nor is it so demanding that it outlaws citation of additional authority to support an argument incompletely or imperfectly presented in district court. But in the context of extraordinary writ relief, consideration of legal arguments not properly presented to and resolved by the district court will almost never be appropriate. *See Califano v. Moynahan,* 596 F.2d 1320, 1322 (6th Cir. 1979) ("We decline to employ the extraordinary remedy of mandamus to require a district judge to do that which he was never asked to do in a proper way in the first place."); *United States v. U.S. Dist. Court for S. Dist. of Cal.*, 384 F.3d 1202, 1205 (9th Cir. 2004) ("[W]e will not find the district court's decision so egregiously wrong as to constitute clear error where the purported error was never brought to its attention."); *Ex parte Green*, 108 So. 3d 1010, 1013 (Ala. 2012) (refusing to hear an argument in a mandamus petition that was not raised in the district court).

Advisory mandamus is appropriate "when the issue presented is novel, of great public importance, and likely to recur." *United States v.*

SUPREME COURT
OF
NEVADA

(O) 1947A

*Horn*, 29 F.3d 754, 769 (1st Cir. 1994). But it should issue only to address the rare question that is "'likely of significant repetition prior to effective review,' so that our opinion would assist other jurists, parties, or lawyers." *In re Bushkin Assocs., Inc.*, 864 F.2d 241, 247 (1st Cir. 1989) (quoting *Nat'l Right to Work Legal Def. & Educ. Found. v. Richey*, 510 F.2d 1239, 1244 (D.C. Cir. 1975)). To efficiently and thoughtfully resolve such an important issue of law demands a well-developed district court record, including legal positions fully argued by the parties and a merits-based decision by the district court judge. *See Reno Hilton Resort Corp. v. Verderber*, 121 Nev. 1, 5-6, 106 P.3d 134, 136-37 (2005) (stressing the benefit of a fully developed district court record); *Dilliplaine v. Lehigh Valley Tr. Co.*, 322 A.2d 114, 116-17 (Pa. 1974) (noting that appellate consideration of arguments not presented to the district court makes the district court "merely a dress rehearsal," "erodes the finality of [district] court holdings," denies the district court the opportunity to avoid or correct its own error, and "encourages unnecessary appeals"). Entertaining an argument raised for the first time in this court also deprives the opposing party of the opportunity to "develop theories and arguments and conduct research on an issue that it otherwise would have had months or years to develop had the issue been raised in the [district] court." Robert J. Martineau, *Considering New Issues on Appeal: The General Rule and the Gorilla Rule*, 40 Vand. L. Rev. 1023, 1039 (1987). Advisory mandamus on a legal issue not properly raised and resolved in district court does not promote sound judicial economy and administration, because the issue comes to us with neither a complete record nor full development of the supposed novel and important legal issue to be resolved.

B.

We also are not persuaded that clarifying the law as Archon asks us to do would affect the district court's denial of the motion to dismiss, thereby advancing the litigation. The district court denied the motion to dismiss by applying cross-jurisdictional class-action tolling to the statute of limitations, but it also found that Haberkorn alleged ongoing harms within the statute of limitations, and that some of the issues needed further development and were better suited for resolution at summary judgment. Thus, the district court's order provided bases independent from the cross-jurisdictional class-action tolling issue for denying Archon's motion to dismiss. We are not asked to consider whether the alternative bases for denial are sound—only to answer whether Nevada recognizes cross-jurisdictional class-action tolling.

It is a longstanding rule that a final judgment is generally required before a party may appeal. *See* NRAP 3A(b)(1). The final judgment rule "is not merely technical, but is a crucial part of an efficient justice system." *Reno Hilton Resort Corp.*, 121 Nev. at 5, 106 P.3d at 136-37. "For the trial court, it inhibits interference from the appellate court during the course of preliminary and trial proceedings, and for the appellate court, it prevents an increased caseload and permits the court to review the matter with the benefit of a complete record." *Id.* at 5, 106 P.3d at 137; *see Wells Fargo Bank, N.A. v. O'Brien*, 129 Nev. 679, 680, 310 P.3d 581, 582 (2013) ("To promote judicial economy and efficiency by avoiding piecemeal appellate review, appellate jurisdictional rules have long required finality of decision before this court undertakes its review."); *Valley Bank of Nev. v. Ginsburg*, 110 Nev. 440, 444, 874 P.2d 729, 733 (1994) (recognizing that the final judgment rule "promot[es] judicial economy by avoiding the specter of piecemeal appellate review").

Supreme Court
OF
NEVADA

(O) 1947A

12

Mandamus is an important escape hatch from the final judgment rule, but such relief must be issued sparingly and thoughtfully due to its disruptive nature. Advisory mandamus, like any form of interlocutory review, carries the significant negative risks of delaying the ultimate resolution of the dispute and undermining the "mutual respect that generally and necessarily marks the relationship between . . . trial and appellate courts." *Bauman v. U.S. Dist. Court*, 557 F.2d 650, 653 (9th Cir. 1977). This is particularly true when advisory mandamus is sought to force reconsideration of a district court order denying a motion to dismiss. A request for mandamus following the denial of a motion to dismiss presents many of the inefficiencies that adherence to the final judgment rule seeks to prevent—an increased caseload, piecemeal litigation, needless delay, and confusing litigation over this court's jurisdiction. *See Int'l Game Tech.*, 124 Nev. at 197, 179 P.3d at 558 ("[B]ecause an appeal from the final judgment typically constitutes an adequate and speedy legal remedy, we generally decline to consider writ petitions that challenge interlocutory district court orders denying motions to dismiss."); *Smith v. Eighth Judicial Dist. Court*, 113 Nev. 1343, 1344, 950 P.2d 280, 281 (1997) (recognizing that "very few writ petitions warrant extraordinary relief, and this court expends an enormous amount of time and effort processing these petitions"); *State, Dep't of Transp. v. Thompson*, 99 Nev. 358, 362, 662 P.2d 1338, 1340 (1983) ("[S]uch petitions have generally been quite disruptive to the orderly processing of civil cases in the district courts, and have been a constant source of unnecessary expense for litigants.").

Granting Archon's request for extraordinary writ relief would not promote sound judicial economy and administration, because a clarification of the law will not alter the district court's denial of the motion

to dismiss. Advisory mandamus is not warranted where, as here, only part of the case is before us, and the district court has already determined that alternative, yet-to-be-developed issues exist such that our resolution of the legal issue will not dispose of the entire controversy. *See Moore v. Eighth Judicial Dist. Court*, 96 Nev. 415, 416-17, 610 P.2d 188, 189 (1980). To grant advisory mandamus in this case would extend our discretion beyond the salutary escape hatch it provides to the final judgment rule and present the very inefficiencies in judicial economy that the final judgment rule seeks to prevent. *See Reno Hilton Resort Corp.*, 121 Nev. at 5, 106 P.3d at 136-37 ("The general rule requiring finality before an appeal may be taken is not merely technical, but is a crucial part of an efficient justice system. For the trial court, it inhibits interference from the appellate court during the course of preliminary and trial proceedings, and for the appellate court, it prevents an increased caseload and permits the court to review the matter with the benefit of a complete record."); *Veazey v. City of Durham*, 57 S.E.2d 377, 382 (N.C. 1950) ("There is no more effective way to procrastinate the administration of justice than that of bringing cases to an appellate court piecemeal through the medium of successive appeals from intermediate orders.").

## C.

Finally, it would not promote sound judicial economy to grant extraordinary writ relief at this point in the proceeding. The district court denied Archon's motion to dismiss without prejudice, declining to entertain its NRS 11.500 argument "at this time." Archon will have further opportunity to present its full legal argument to the district court at summary judgment, or to this court on appeal or, even, in another writ petition, depending on discovery and the eventual substantive motion practice that may ensue. *See United States v. U.S. Dist. Court for S. Dist. of*

SUPREME COURT
OF
NEVADA

(O) 1947A

14

*Cal.*, 384 F.3d 1202, 1205 (9th Cir. 2004) (declining to hear a waived argument on a petition for writ relief because petitioner could raise the issue again in the district court, on appeal, or in a second writ petition); *see also Plata v. Schwarzenegger*, 560 F.3d 976, 984 (9th Cir. 2009) ("It would be most inappropriate for this court to address [issues not properly raised in the district court] by the extraordinary writ of mandamus before the district court has dealt with them."); *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) ("Permitting piecemeal, prejudgment appeals . . . undermines efficient judicial administration and encroaches upon the prerogatives of district court judges, who play a special role in managing ongoing litigation.") (internal citations omitted).

## IV.

This is not an extraordinary cause for which the extraordinary relief of advisory mandamus should issue. Petitioners raise a new legal argument in their petition, and even if we were to clarify the law as requested, it would not dispose of the entire controversy in the district court. Sound judicial economy and administration militate against our intervention in the district court's proceedings under these circumstances, and we, therefore, deny petitioners' request for extraordinary writ relief.

_____, J.
Pickering

We concur:

_____, J.
Douglas

_____, J.
Gibbons